# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO. 5:17-CV-00228-KDB-DSC

| | |
|---|---|
| JERMI LITTLE, | |
| **Plaintiffs,** | |
| **v.** | **ORDER** |
| TIM CLINE<br>HANES INDUSTRIES<br>LYNN MATTHEWS, | |
| **Defendants.** | |

Plaintiff Jermi Little was a production employee and a truck driver at Defendant Hanes Industries ("Hanes"), until he was terminated in December 2015. Little alleges in this action that he was discriminated against because of his race (bi-racial) and religion (Jehovah's Witness) and that he is the victim of unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*. ("Title VII"). Now before the Court is Defendants' Motion for Summary Judgment on all claims (Doc. No. 20).

For the reasons discussed below, the Court will grant the motion in part and deny it in part. As a matter of law, the individual defendants, Tim Cline and Lynn Matthews, are entitled to summary judgment because Title VII claims cannot be asserted individually against a defendant company's employees. Also, Hanes is entitled to summary judgment on Little's religious discrimination and retaliation claims. However, the Court finds that there are disputed issues of material facts on Little's claim of racial discrimination, so Hanes is not entitled to summary judgment on that claim. Therefore, whether or not Little was subject to unlawful racial

discrimination must be decided by the jury at the trial of this matter, if the case is not resolved earlier by the parties.[1]

## I.     LEGAL STANDARD

Summary judgment must be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if it might affect the outcome of the suit under the governing law." *Vannoy v. Federal Reserve Bank of Richmond*, 827 F.3d 296, 300 (4th Cir. 2016) (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). "The burden on the moving party may be discharged by 'showing' ... an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," *Id*. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. *Id*. at 324.

---

[1] This matter is currently scheduled for the Court's November 18, 2019 trial term. With respect to a potential resolution of this matter between the parties, the filing of this Order does not relieve the parties of their obligation to hold a Settlement Conference following the briefing of a motion for Summary Judgment and to file a certification of the conference with the Court pursuant to the Court's standing Pretrial Order and Case Management Plan at ¶ IV A, C.

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014); *see also Anderson*, 477 U.S. at 255. "Summary judgment cannot be granted merely because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). "The court therefore cannot weigh the evidence or make credibility determinations." *Id*. at 569 (citing *Mercantile Peninsula Bank v. French* (*In re French*), 499 F.3d 345, 352 (4th Cir. 2007)).

However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Also, the mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *Id*. If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate. *Id*. at 249-50.

In the end, the question posed by a summary judgment motion is whether the evidence as applied to the governing legal rules "is so one-sided that one party must prevail as a matter of law." *Id*. at 252.

## II.      FACTS AND PROCEDURAL HISTORY

Little grew up and currently resides in Hickory, North Carolina. He is bi-racial, with an African American mother and a Caucasian father. Little served in the U.S. Army for three years,

from 2001 to 2004, and drove a fuel truck during his military service. Following his honorable discharge, he was employed from 2004 to 2010 with a military defense subcontractor in the Middle East, including Iraq and Kuwait, where his duties included working in the motor pools and driving tractor trailers with full length (53') trailers. Over the course of those nine years, Little spent approximately three years driving large trucks.

Little began as a full-time employee at Hanes in Conover, North Carolina in June 2011 and worked there until December 15, 2015, when he was terminated. At Hanes, he held production positions until he became a truck driver in November 2015. With respect to Little's employment, Hanes alleges that "although Little performed more or less satisfactorily in most of his production positions, he was viewed as somewhat of a 'loner' and had a number of negative interactions with co-workers of all races." Little disputes Hanes' adverse allegations with specific explanations of his conduct, along with corroborating affidavits from other employees.

Defendant Tim Cline is plant manager of Hanes' Conover, NC facility and Defendant Lynn Mathews is the plant's Human Resources manager. Both are Caucasian. There is no dispute that Cline, Matthews and other relevant Hanes employees knew Little's race because he has both a white uncle and a black cousin working at Hanes. Indeed, Cline has allegedly admitted that he knew Little was bi-racial.

A. Allegations Related to Religious Discrimination

The factual circumstances related to Little's religious discrimination claim involve his attendance and conduct at the company's 2012 year-end event, which Little refers to as a "Christmas party" and Hanes calls a "year-end business dinner." When he applied to be a truck driver in 2014, Little was not selected for an interview and it is generally undisputed that he was told that the reason was "because of his attitude." Specifically, Little was told in this meeting that

his behavior at the year-end dinner in 2012 had made a negative impression on senior management. There is, however, a substantial factual dispute about what happened at the dinner. Hanes alleges that during the dinner Little refused to sit down with his co-workers and instead paced around the room while the president of the company was making a presentation. Little denies this and has proffered affidavits of two witnesses who support his version of what happened.[2]

In any event, Little replied to the criticism of his conduct at the Christmas party / dinner by saying, "I don't have to participate in a religious holiday to be considered for a job." To which Cline allegedly said, "well, it don't look good." Little then spoke with Joe Shuford, a supervisor who was also a family friend, to tell him what Cline and Matthews said and why he felt that was unfair. Shuford was aware that Little was raised as a Jehovah's Witness, and Little alleges Shuford understood that this was the reason that Little did not want to go to the Christmas party.

Shuford told Little to talk with Samantha Howell (Hanes VP for Human Resources). Little told Howell what Cline and Matthews said to him, and why he felt that was unfair. She allegedly told him that it "wasn't handled properly," apologized to him and said she would talk with Cline and Matthews. Regarding the Christmas party, Little said to her, "I don't have to participate to be considered for a job," and "it doesn't matter what religion I am, and whether I participate in a Christmas party or not." Little also alleges that he had a similar conversation with Cline in 2015, which Hanes denies.

Little alleges that he is a Christian who believes in the practices of Jehovah's Witnesses and states that because of those beliefs he does not celebrate Christmas. The parties disagree on how much the Hanes supervisors knew about the beliefs Little held as a Jehovah's witness. Hanes

---

[2] The parties also dispute whether the year-end dinner was "mandatory." Hanes argues it was not, but Little along with two other Hanes employees have testified that they were told attendance was not voluntary.

denies that Cline or Matthews knew Little had a religious objection to the dinner and further alleges that Little never requested any religious accommodation related to the dinner. On the other hand, Little alleges that he and one of his supervisors, Darrell Steele, were a part of the same congregation and attended services together at the Jehovah's Witness Kingdom Hall in Hickory, North Carolina for many years. He says that another supervisor, Joe Shuford, was familiar with Little's Jehovah's witness beliefs because he was a close family friend.

B.   Allegations Related to Racial Harassment

While Little has now withdrawn his separate claim based on racial harassment, he continues to allege racial harassment as evidence that supports his remaining claims. Little was one of Hanes' few black employees and its only black truck driver.  He alleges that he was verbally harassed by his co-workers. For example, it is undisputed that after Little's termination he received calls from an unnamed caller using the Hanes' phone number who giggled and asked "hey, half-breed, you find a job yet?" Also, Little claims that Hanes employee Dustin Valko was a "known racist" whose Facebook page was notable for its rebel flags. Little says he complained about that racism to a plant supervisor, and even showed that supervisor photos. There is, however, no evidence that Hanes management knew about, participated in or condoned the post-termination calls or that Valko expressed any racial animosity towards Little.

C.   Little's Efforts to Become a Truck Driver and Termination

Little wanted to be a Hanes truckdriver. He had a commercial driver's license ("CDL") when hired by Hanes, as well as his three years' experience as a truck driver in the Army and with the defense contractor in the Middle East. Little first applied for a Hanes driving job in 2011, but the job was given to an employee who had been out sick and was coming back to work. Little does not complain about not being chosen at that time.

As discussed above, Little sought a truck driving position again in 2014, but was not selected for an interview. He applied later in 2014 and also during 2015, sometimes failing the driving test, and when he did pass he was not given the job because of the absence of a timely drug test (a situation for which Hanes appears to take responsibility but claims was just an unfortunate error).[3] Ultimately, Little passed the driving test and the other administrative /drug testing requirements at the same time and was offered a truck driving position in November 2015.

Most relevant to the pending motion, Little testified that, "before I was allowed to start driving, both Tim Cline and Lynn Matthews called me into their office on my first day on the driving job. They told me if anything happened on the job, good or bad, I was to report it to Jeff Rinehart and to make sure that I did not get into it with the customer and not to bring anything negative to the customer." Further, Little says that Cline admitted Little was told that he was to inform his supervisor if there were any issues with a customer. Finally, Little states that Matthews admitted that "we did tell him eventually when we did give him the truck driver position that if he went into a customer and there was an issue not to get into it with the customer but to call in or come back and let us know there was a problem and we'd take care of it. "

Hanes does not deny these statements but asks the Court to interpret them differently. Cline testified that he and Matthews continued to be concerned in 2015 about Little's ability to interact effectively with Hanes' customers. As a result, before allowing Little to take his final road test to become a customer-facing driver, Cline counseled him to avoid negative interactions with customers, instead notifying his supervisor if there were a problem. Hanes says that Cline only had in mind "customer care" issues, such as complaints about the quality of Hanes' products or the

---

[3] There are also numerous factual disputes concerning Little's driving tests and the extended process by which he was hired as a truck driver.

timeliness of deliveries and did not mean to imply that Little should not immediately tell a customer about an accident on the customer's property that had caused damage. However, Hanes has not offered any evidence that Little was told that accidents should be treated differently or of any specific company policy or training that required truck drivers to notify customers of property damage caused by the driver prior to leaving the customer's facility.[4]

Little initially performed well as a driver at Hanes. After he had been driving for two weeks, he went to his supervisor Jeff Rinehart and asked him if there was anything else he needed to do and was he doing everything OK. Rinehart said to Little that he was "doing fine." Little made all deliveries on time, and even volunteered when the company needed extra drivers to work on Saturdays to move trailers around the yard. No complaints were made about his driving, deliveries or any other aspect of his work.

Little was fired after completing a delivery to a company, Interstate Foam, which was located across the street from Hanes. Surveillance footage at Interstate Foam shows that he took a corner too sharply and knocked the entrance gate down completely. When Little was about to leave, he noticed that the entrance gate was down. He says that he had not felt anything when he drove in, but concluded he must have hit the gate, so rather than leaving, he turned around, went back to the receiving door and knocked again, all while standing in a rainstorm. Little knocked for several minutes, but no one answered. He placed five or six calls to his supervisor Rinehart, as he had been instructed, so that he could report this incident. When Rinehart did not respond to his calls, Little drove his truck directly back to Hanes (less than two minutes away) and immediately

_____

[4] For the first time in its reply brief Hanes suggests that CDL license holders have a duty – "depending on the circumstances" - not to leave the scene of an accident. However, an alleged CDL violation was not the basis of Little's termination nor was it ever mentioned to Little or the EEOC in the course of these events.

went to find Rinehart. Little found his supervisor within a few minutes and told him that he thought that he had hit the gate at Interstate Foam. Rinehart asked Little if he had damaged the truck and if anyone had seen him hit the gate. If not, Rinehart said "then don't worry about it."[5]

Soon after Little told Rinehart about the incident, the customer sent an email to Hanes complaining about the gate. Cline and Matthews subsequently called Little in to discuss the accident. Little said the accident was his fault and offered to pay for the damage out of his own pocket. Hanes says that "because of the very high premium that Hanes places on good customer relations," Cline and Matthews considered Little's failure to report the accident to anyone at Interstate Foam before leaving the scene a terminable offense. So, after Little's termination had been approved by a "review board" of senior management, Matthews called Little and told him that the review board had decided to terminate Little's employment with Hanes. The given reason for the termination was Little's leaving the scene without reporting the accident to the customer. According to Hanes, Little was not offered the opportunity to return to a production level position because Hanes has a longstanding policy and practice of not demoting drivers back to production positions.

D.    Post Termination Events

On December 18, 2015, Little filed a charge with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race and religion and retaliation. Little received a "right to sue" letter from the EEOC on September 28, 2017, and Little filed this lawsuit *pro se* on December 22, 2017. The parties do not dispute the timeliness of the Complaint. On June

---

[5] Hanes has not offered any affidavit from Rinehart to address these allegations or otherwise testify in support of its motion for summary judgment.

10, 2019, Defendants filed their motion for summary judgment on all claims.[6] After Little initially failed to respond to the motion, the Court entered a Roseboro order directing him to respond on July 2, 2019. Thereafter, Plaintiff engaged an attorney to represent him, and he is now represented by counsel.

## III.   DISCUSSION

### A.   Claims Against the Individual Defendants

The individual defendants Cline and Matthews are entitled to summary judgment as a matter of law on the claims asserted against them. Little's claims all arise under Title VII; therefore, his claims against the individual defendants must be dismissed on the ground that there is no "individual-capacity" liability under Title VII. *See, e.g., Lissau v. Southern Food Service, Inc.,* 159 F.3d 177, 180-82 (4th Cir. 1998).[7]

### B.   Race Discrimination

Little alleges that he was "discharged due [to] my race ""in violation of Title VII of the Civil Rights Act of 1964."  A plaintiff may establish a Title VII violation in two ways. First, a plaintiff may demonstrate through direct evidence that illegal discrimination motivated an employer's adverse employment action. Alternatively, a plaintiff may proceed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See generally Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284–85 (4th Cir.2004) (en banc); *Cherry v. Elizabeth City State University*, 147 F.Supp.3d 414, 421 (E.D.N.C. 2015).

---

[6] Initially, Little alleged racial harassment, but his separate claims based on those allegations were withdrawn in his response brief to the motion for summary judgment.
[7] At oral argument, Little's counsel did not oppose summary judgment in favor of the individual defendants, conceding that Little's Title VII claims against them (which were filed before she was engaged) could not properly be brought under Title VII.

Direct evidence is evidence from which no inference is required. To show race discrimination by direct evidence, a plaintiff typically must show discriminatory motivation on the part of the decisionmaker involved in the adverse employment action. *See Hill*, at 286–91. Such direct evidence would include a decisionmaker's statement that he did not promote a plaintiff due to his race. *See id*. at 303. The decisionmaker must be either the employer's formal decisionmaker or a subordinate who was "principally responsible for," or "the actual decisionmaker behind," the allegedly discriminatory action. *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 151–52, (2000); *Holley v. N.C. Dep't of Admin*., 846 F.Supp.2d 416, 427 (E.D.N.C.2012).

Here, while there is some evidence of racial animus in the post termination "half breed" phone calls and allegations of racist attitudes by at least one co-worker, there is no proffered direct evidence of racial discrimination by any of the Hanes decisionmakers. [8]

However, even without direct evidence of race discrimination, a plaintiff s Title VII claim can survive summary judgment if the plaintiff raises a genuine issue of material fact under the burden-shifting framework established in *McDonnell Douglas*. Under this analysis, a plaintiff must first establish a prima facie case of discrimination. *See, e.g., St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252–53 (1981). If a plaintiff establishes a prima facie case, the burden shifts to the defendant to produce evidence that the defendant took the adverse employment action "for a legitimate, nondiscriminatory reason."

---

[8] Courts should not quickly attribute "to any ultimate decision maker ... the most unfortunate expressions and beliefs of those around him." *Merritt v. Old Dominion Freight Line, Inc*., 601 F.3d 289, 300 (4th Cir.2010). "[T]hat any distasteful comments will arise in the workplace" is regrettable. Id. "[B]ut that cannot mean that the actual decision maker is impugned thereby. It is the decision maker's intent that remains crucial, and in the absence of a clear nexus with the employment decision in question, the materiality of stray or isolated remarks is substantially reduced." Id.; *see Brinkley v. Harbour Recreation Clu*b, 180 F.3d 598, 608 (4th Cir.1999), *overruled on other grounds by Desert Palace. Inc. v. Costa*, 539 U.S. 90 (2003).

*Burdine*, 450 U.S. at 254. If the defendant offers admissible evidence sufficient to meet its burden of production, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons but were a pretext for discrimination." *Hill*, 354 F.3d at 285 (quotation omitted).

The elements of a prima facie claim of discrimination under Title VII are well established. "The plaintiff must demonstrate: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 214 (4th Cir. 2007), citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S. Ct. 1817 (1973).

Alternatively, to establish a prima facie case of discrimination in the enforcement of employee disciplinary measures, the plaintiff must show: (1) that he is a member of a class protected by Title VII, (2) that the prohibited conduct in which he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against him were more severe than those enforced against those other employees. *See Cook v. CSX Transp. Corp.,* 988 F.2d 507, 511 (4th Cir.1993); *Moore v. City of Charlotte,* 754 F.2d 1100, 1105–06 (4th Cir.1985).

For purposes of this motion, Hanes does not dispute that as a bi-racial man Little is within a protected class for the purpose of making a claim for race discrimination. Also, there is no dispute that Little was terminated, which is an adverse employment action. Therefore, the elements of Little's prima facie case at issue are "satisfactory job performance" and "different treatment from similarly situated employees outside the protected class." In the "alternative" prima facie case, the parties dispute whether he engaged in "misconduct" and, even if he did, whether his discipline was

more severe than enforced against employees outside the protected class. As discussed below, there are disputed factual issues for all these elements.

In order to create a triable issue regarding the issue of satisfactory job performance, "a plaintiff must proffer evidence of a genuine dispute concerning whether, 'at the time of his dismissal, he was performing his job in a way that met the legitimate expectations of [the defendant]. Specifically, the Court looks to the perception of the decision-maker in considering whether the employee was meeting job expectations at the time of dismissal.'" *Reid v. Dalco Nonwovens, LLC*, 154 F. Supp. 3d 273, 285 (W.D.N.C. 2016) (quoting *Pettis v. Nottoway Cnty. Sch. Bd.*, 980 F.Supp.2d 717, 725 (E.D. Va. 2013)).

In *Haynes v. Waste Connections, Inc*., 922 F.3d 219, 225 (4th Cir. 2019), the Fourth Circuit recently discussed this "satisfactory job performance" requirement, overruling a District Court decision that the employee had not established a prima facie case of discrimination under Title VII. In *Haynes*, the court held that, "a showing of satisfactory performance does not require the plaintiff to show that he was a perfect or model employee. Rather, a plaintiff must show only that he was qualified for the job and that he was meeting his employer's legitimate expectations. *Warch v. Ohio Cas. Ins. Co*., 435 F.3d 510, 515–16 (4th Cir. 2006)." Specifically, the court found that testimony submitted by the employee that the employer had "told him in September 2015 ( a few weeks before his termination) that "everything looks good" and there was "nothing to worry about regarding his upcoming performance review" raised "the reasonable inference—which must be drawn in Haynes's favor at this stage—that he was performing at a satisfactory level." Also, the Haynes court rejected the employer's argument that Haynes "failed to perform satisfactorily by sending a text to Fountain in violation of company policy," holding that "a dispute of fact would still exist as to whether Haynes met his employer's legitimate expectations at that time, because

evidence in the record suggests that Haynes routinely communicated with Fountain via text." Thus, the Fourth Circuit concluded that the employee had successfully presented a prima facie case of discrimination.

The facts in this case are similar to *Haynes*. Here, Little has testified that he was told shortly before his termination that he was "doing fine" and Hanes acknowledges that "Little performed more or less satisfactorily in most of his production positions." Also, with respect to the specific incident for which he was terminated, there is a factual dispute over whether Little was following specific orders from Hanes to first report any problems directly to his supervisor at Hanes rather than breaking any company rule or policy. (Indeed, Hanes has not proffered any relevant policy or training related to what a truck driver is required to do under these circumstances).[9] Therefore, under the authority of *Haynes*, it appears that Little has established that he has at least minimally met the "satisfactory job performance" element of his prima facie case of race discrimination.

However, even if Little satisfies the first three elements of his prima facie case, Hanes is still entitled to summary judgment unless Little establishes that similarly situated employees were treated more leniently. To demonstrate a triable issue on the fourth element of the prima facie case, a plaintiff must show that employees outside his protected class were similarly situated in all relevant respects, though they need not have engaged in "precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances[.]" *Cook*, 988 F.2d at 511.

---

[9] Further, Little's undisputed efforts to call his supervisor at Hanes while he was still at the customer's location and repeatedly knocking on the door of the customer's receiving office in the rain could arguably be a good faith effort to comply with a company "policy" to notify the customer prior to leaving the customer's location sufficient to create a disputed issue of fact on this element of his prima facie case.

Little offers evidence of two comparator drivers, both Caucasians. He states: "I was in Jeff's [Rinehart] office about two weeks before I was fired. Truckdriver Marty Pennington came in and told Jeff he had hit a vehicle in a customer's parking lot. Jeff asked him if he caused any damage to the Hanes truck or anyone saw it? Marty said 'no.' Jeff said—then don't worry about it. Marty was still working at the time I was fired and continued to work at Hanes after that." (Little Decl. ¶ 47). Also, Little alleges that a second Caucasian driver, named Mike, "received four to five write-ups before he was finally fired. Mike even drove another Hanes employee off the road, according to that employee. She said she reported this to Mr. Cline, but nothing was done about it." (Id. at ¶ 48, *see also*, Little Deposition at pp. 88-90).

In response, Hanes argues that Little's evidence related to the first comparator, Marty Pennington, was based on inadmissible hearsay and that Pennington is not a comparator because Pennington has no record of having had an accident while at Hanes, and had even been the recipient of safe driving awards in 2015 and 2016. However, Little's personal knowledge of Pennington and Rinehart's alleged conversation is not "hearsay;" rather, it is simply his personal recollection of a conversation and supervisor Rinehart's statement of what Pennington should do under the circumstances. See Fed. R. Evid. 801(d)(2) (describing when opposing party's statements are not hearsay). Also, the fact that Hanes has no record of Pennington having an accident is entirely consistent with Little's testimony that Rinehart told Pennington "not to worry about it." Indeed, Hanes failure to file an affidavit from either Pennington or Rinehart, even though it filed numerous affidavits in support of its motion, implicitly supports a finding that disputed issues remain with respect to these allegations (i.e., Hanes is careful not to say that Pennington did not have an accident nor that the conversation Little alleges did not occur, just that Hanes "has no record" of

an accident). Therefore, Little has established for the purposes of this summary judgment motion that Pennington is a white comparator who was treated better than Little.

With respect to the second white driver, "Mike," Hanes admits that he "had a history of disciplinary write-ups and was terminated in 2015 after engaging in inappropriate behavior at a customer site." However, Hanes argues Little had a similar "history of disciplinary write-ups and was terminated in 2015 after engaging in inappropriate behavior at a customer site that was arguably more serious than 'Mike's' inappropriate behavior." Again, the parties have numerous factual disputes over both Little's record and the details of "Mike's" record so the Court cannot hold at this stage that no reasonable jury could find that "Mike" was not treated differently than Little because he was given more chances under similar or worse circumstances.

Therefore, Little has established a "prima facie" case of race discrimination. Similarly, with respect to the "alternative" prima facie case of discriminatory discipline, Little has established that he is in a protected class, he had a similar or arguably less serious driving accident (allegedly running another driver off the road appears on its face to be more serious than Little's minor property damage accident) and less discipline was imposed on the white drivers or they were given more chances.

By establishing a prima facie case, Little shifts the burden to Hanes to provide a legitimate, non-discriminatory reason for its decision to terminate Little. A defendant's burden of providing a legitimate, non-discriminatory reason is one of production, not persuasion. *St. Mary's Honor Ctr.*, 509 U.S. at 509. A defendant must present its legitimate, non-discriminatory reason "with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext." *Burdine*, 450 U.S. at 255–56. Hanes asserts that Little was terminated because he failed to report

to a customer a truck driving accident that damaged the customer's property before leaving the customer's facility.

Little argues that this is not a legitimate, non-discriminatory basis for termination because of the instructions given to Little to report problems to Hanes rather than to the customer, and the absence of a specific policy or rule requiring that truck drivers report damage to the customer. However, those arguments are more properly considered in the context of "pretext" than whether Hanes had a legitimate, non-discriminatory basis for the termination. "Leaving the scene of an accident" could well be grounds for termination of a truck driver (putting aside the issues of whether Hanes in fact prohibited drivers from doing so or told Little to handle that situation differently). Accordingly, Hanes has articulated a legitimate, non-discriminatory reason for the discharge.

Thus, the burden shifts back to Little to demonstrate that Hanes' justification is a pretext for race discrimination. *See, e.g., Hux v. City of Newport News*, 451 F.3d 311, 314–15 (4th Cir.2006). The Fourth Circuit has held that "'when an employer articulates a reason for discharging the plaintiff' that the statute does not proscribe, 'it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.'" *Villa v. CavaMezze Grill, LLC,* 858 F.3d 896, 901 (4th Cir. 2017) (*quoting DeJarnette v. Corning Inc.,* 133 F.3d 293, 299 (4th Cir. 1998)). However, if a jury could find the "proffered explanation for the discharge . . . 'unworthy of credence,'" then summary judgment for the employer is improper. *Merritt v. Old Dominion Freight Line, Inc.,* 601 F.3d 289, 295 (4th Cir. 2010) (quoting *Tex. Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256 (1981)). In conducting this analysis, the court does not sit to decide whether the defendant in fact discriminated against the plaintiff based on race. *See, e.g., Holland v. Washington Homes, Inc*., 487 F.3d 208,

217 (4th Cir.2007); *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274, 279–80 (4th Cir.2000). Rather, the focus concerns whether plaintiff has raised a genuine issue of material fact as to pretext. *See, e.g., Hux*, 451 F.3d at 314–19; *Dugan v. Albemarle Cty. Sch. Bd.*, 293 F.3d 716, 722 (4th Cir.2002).

Considering the record and viewing all inferences in the light most favorable to Little, the Court finds that a jury could conclude that Hanes' "proffered explanation for the discharge . . . [is] 'unworthy of credence.'" If the jury believes either Little's testimony that he was told not to discuss problems with the customer (and that direction applies to the circumstance of a minor accident that caused only property damage) or that Hanes did not enforce the same "rule" requiring notice to the customer with other drivers (e.g., not disciplining Pennington for the same conduct) then it might find Hanes' asserted explanation to be a pretext for discrimination. In sum, because Little has established a genuinely disputed factual issue on whether Hanes' proffered explanation for Little's termination is credible, summary judgement may not be entered against Little on his claim of racial discrimination, and it is for the jury to determine if Hanes unlawfully discriminated against Little based on his race.

### C.  Religious Discrimination

However, Hanes is entitled to summary judgement on Little's claim of religious discrimination. A plaintiff can assert Title VII religious discrimination claims under two separate theories—disparate treatment or failure to accommodate. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996); *E.E.O.C. v. Abercrombie & Fitch Stores, Inc.*, 573 U.S. 991 (2015); 42 U.S.C. § 2000e–2(a). An allegation of "disparate treatment" alleges "intentional discrimination" under 42 U.S.C. § 2000e–2(a)(1) on the basis of religion. That provision prohibits an employer from (1) "discriminat[ing] against any individual" (2) "because of" (3) "such individual's ... religion." Id. § 2000e–2(a)(1). Title VII, in turn, defines religion to

"includ[e] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's ... religious observance or practice without undue hardship on the conduct of the employer's business." Id. § 2000e(j) (emphasis added). "Because this definition includes a requirement that an employer 'accommodate' an employee's religious expression," an employee alleging intentional discrimination under § 2000e–2(a)(1) can bring suit based on a disparate-treatment theory or a failure-to-accommodate theory. *See Chalmers*, 101 F.3d at 1018 (citing *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 97 S.Ct. 2264, 53 L.Ed.2d 113 (1977)).

Little's claim of religious discrimination appears to have elements of both theories. Little alleges that it would be reasonable for a fact-finder to conclude that Cline knew Little held religious beliefs which caused him to try to avoid participating in the year end Christmas party based on the fact that multiple relatives and friends of Little had been working at Hanes for some time, and that Cline had worked at Hanes for over 30 years. Further, Little argues that Hanes should have inferred that Little had a religious objection to the requirement that he attend the Christmas party from the statements he made during his conversations with Cline and Howell, even if the Hanes supervisors did not know the specifics of his religious objection. Little then attempts to tie his termination[10] to his objection to attending the Christmas party, claiming that Hanes continued to hold his behavior at the party against him and implying that Hanes should have accommodated his religious beliefs by not requiring him to attend the Christmas party in the first place.

---

[10] Little acknowledged at oral argument that he cannot pursue any claims against Hanes for not allowing him to interview for a truck driving position in 2014 because such claims would be untimely. (Little did not file his charge of discrimination until late December 2015, more than 180 days after the incidents he complains about so claims based on them are untimely). However, Little argues that Hanes' conduct reflects the company's unlawful adverse view of his religious beliefs, which was allegedly manifested in Hanes' later termination of Little's employment.

Like his claim of race discrimination, Little can avoid summary judgment on his claim of religious discrimination by either providing direct evidence of discrimination or by using the *McDonnell Douglas* analysis. Again, Little acknowledges there is not sufficient direct evidence of religious discrimination and seeks to prove his claim through *McDonnell Douglas*. With respect to his prima facie case, Little has established that he is in a protected class because of his beliefs as a Jehovah's Witness and that he suffered an adverse employment action when he was terminated. Also, he has established "satisfactory job performance" as discussed above.

However, unlike his race discrimination claim, Little has not proffered any evidence that other employees who had different religious beliefs were treated better. Rather, the undisputed evidence is that no employee was disciplined in connection with Christmas party attendance or conduct. Therefore, Little cannot establish a prima facie case of religious discrimination under a disparate treatment theory.

Unlike disparate treatment, under a failure-to-accommodate theory "an employee can establish a claim even though he cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for his discharge." *Id.* To establish a prima facie failure-to-accommodate claim, a plaintiff must show (1) he has a bona fide religious belief or practice that conflicts with an employment requirement and (2) the need for an accommodation of that religious belief or practice served as a motivating factor in the employer's adverse employment action. See *Abercrombie & Fitch Stores, Inc.*, *supra*. (clarifying that "the rule for disparate-treatment claims based on a failure to accommodate a religious practice is straightforward: An employer may not make an [employee's] religious practice, confirmed or otherwise, a factor in employment decisions").

Here, Little alleges that he has a religious belief that conflicts with an employment requirement (that he attend the Christmas party). However, while he complained about the criticism of his behavior at the party in religious terms, there is no evidence that he ever requested any "accommodation" related to the party; specifically, it does not appear that he ever asked to be excused from having to attend the party. In the absence of any request for an accommodation, Little cannot successfully argue that a jury could reasonably find that his need for an accommodation, or even his religious beliefs generally, was a motivating factor in his termination. Indeed, there is no evidence connecting Little's religious beliefs to the termination of his employment beyond Little's speculation.

Accordingly, Little has failed to establish a prima facie case of religious discrimination under Title VII, and Hanes is entitled to summary judgment on that claim.

D.    Retaliation

Finally, Little asserts that Hanes retaliated against him for engaging in a protected activity.[11] As with his other claims, Little has offered no direct evidence of retaliation and relies on the *McDonnell Douglas* framework. Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of retaliation. *See, e.g., St. Mary's Honor Ctr.*, 509 U.S. at 506; *Burdine*, 450 U.S. at 252–55; *Holland*, 487 F.3d at 218; *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir.2001).

---

[11] While Little stated at oral argument that he was still pursuing a retaliation claim, he included no arguments or authorities supporting such a claim in his response brief, so the claim could be held to have been waived. See, e.g., *Forgus v. Mattis*, 753 Fed. Appx. 150, 153 (4th Cir. 2018) (retaliation claim waived where plaintiff failed to address it in opposition to employer's motion to dismiss). The Court, however, will exercise its discretion and address the merits of Little's retaliation claim.

Title VII prohibits an employer from discriminating against his employee because he "has opposed any . . . unlawful employment practice" under Title VII. 42 U.S.C. § 2000e–3(a).  Under Title VII, a plaintiff establishes a prima facie claim for unlawful retaliation by showing: (1) he engaged in protected activity; (2) he experienced an adverse employment action; and (3) a causal link exists between the two events. *See Balas v. Huntington Ingalls Indus., Inc*., 711 F.3d 401, 410 (4th Cir. 2013); *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005).

The structure and grounds for Little's retaliation claim are not clearly stated and, as noted, he has not presented any argument in his response brief regarding this claim. At oral argument, Little's counsel clarified that his retaliation argument related to his claim of religious discrimination, arguing that Little was terminated in retaliation for his statements in 2014 related to the 2012 Christmas party.  Even assuming Little's comments stating that he did not have to participate in a religious holiday to be hired in a job constitute "protected activity," there is no evidence of a causal connection between his comments and his termination, which are distant in time from each other.

To establish the required causal link, Little must show but-for causation, or "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013).  In addition, the plaintiff must illustrate close temporal proximity between the "employer's knowledge of protected activity" and the alleged retaliatory action. *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001). Thus, the passage of time may undermine any conclusion that events are causally connected. *See Breeden*, 532 U.S. at 273–74 (finding that a twenty-month gap suggested "no causality at all" and citing cases finding no causal link when the gap was only three or four months). Here, the alleged "protected activity" was in the first half of 2014 and Little's termination

was in December 2015, over a year and a half later. Further, it is undisputed that the precipitating event for Little's termination was his truck driving accident, not any activity connected with any "Christmas party" or other activity related to a religious belief or observance. Therefore, Little has failed to show any genuine issue of material fact regarding a causal connection between any alleged protected activity and the termination of his employment. Accordingly, Little has failed to establish a prima facie case of unlawful retaliation under Title VII and Hanes is entitled to summary judgment on that claim.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Hanes' Motion for Summary Judgment (Doc. No. 20) is hereby **GRANTED** as to Little's claims against Defendants Tim Cline and Lynn Matthews and as to Little's claims for religious discrimination and retaliation, and **DENIED** as to Little's claim for racial discrimination, which shall proceed to a trial on the merits.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 7, 2019

Kenneth D. Bell
United States District Judge